COURT OF APPEALS OF VIRGINIA

Present: Judges Chafin, Malveaux and Senior Judge Haley

HEAVEN WILKES RASHEED

v.      Record No. 1569-18-3

ROANOKE CITY DEPARTMENT OF
 SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
APRIL 16, 2019

FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
J. Christopher Clemens, Judge

(Shannon L. Jones, on brief), for appellant.

(Daniel J. Callaghan, City Attorney; Heather P. Ferguson, Assistant
City Attorney; Diana M. Perkinson, Guardian *ad litem* for the minor
children; Perkinson Law Office, on brief), for appellee.

Heaven Wilkes Rasheed (mother) appeals the orders terminating her parental rights and

approving the goal of adoption. Mother argues that the circuit court erred by (1) "finding clear and

convincing evidence satisfying the statutory factors required by Virginia Code Section

16.1-283(C)(2)" and (2) "finding that there was clear and convincing evidence that termination of

[mother's] residual parental rights was in the child's [sic] best interests and that the child [sic] be

[p]laced for adoption . . . ." Upon reviewing the record and briefs of the parties, we conclude that

this appeal is without merit. Accordingly, we summarily affirm the decision of the circuit court.

See Rule 5A:27.

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND[1]

"On appeal from the termination of parental rights, this Court is required to review the evidence in the light most favorable to the party prevailing in the circuit court." Yafi v. Stafford Dep't of Soc. Servs., 69 Va. App. 539, 550-51 (2018) (quoting Thach v. Arlington Cty. Dep't of Human Servs., 63 Va. App. 157, 168 (2014)).

Mother has two children, who are the subject of this appeal. The Roanoke City Department of Social Services (the Department) first became involved with the family in February 2016, when mother reported that she was overwhelmed and feared that she would harm the children.[2] The Department placed the children in respite care for approximately one week. Mother went to the hospital for a mental health assessment and declined a voluntary in-patient treatment program. The Department provided ongoing services, offered financial assistance, and recommended parenting classes, but mother refused to attend the parenting classes.

The Department became involved with the family again on December 15, 2016, when the police executed a search warrant at the family's home and discovered that mother's husband[3] was dealing drugs out of the home. The police contacted the Department, and the Child Protective Services (CPS) investigator spoke with mother. Mother admitted that she had used cocaine and marijuana two days earlier and was aware that her husband was dealing drugs out of

---

[1] The record in this case was sealed. Nevertheless, the appeal necessitates unsealing relevant portions of the record to resolve the issues raised by appellant. Evidence and factual findings below that are necessary to address the assignments of error are included in this opinion. Consequently, "[t]o the extent that this opinion mentions facts found in the sealed record, we unseal only those specific facts, finding them relevant to the decision in this case. The remainder of the previously sealed record remains sealed." Levick v. MacDougall, 294 Va. 283, 288 n.1 (2017).

[2] The children were three and five years old at the time.

[3] Mother's husband was not the biological father of the children.

the family home. Mother agreed that she and the children would stay at a friend's home for the night, and she signed a safety plan with the Department.

The next morning, the CPS investigator contacted the friend with whom mother was supposed to be staying, but the friend informed the CPS investigator that mother and the children had not come to her house the previous night. Once the CPS investigator located mother, the Department informed mother that she needed to place the children with someone else because mother had violated the safety plan and had a CPS history. Mother agreed to place the children with her husband's mother, Darlene Hale, and signed a safety plan. On December 27, 2016, the Department obtained a preliminary child protective order after mother failed to comply with the safety plan, failed to recognize the current abuse and neglect, and failed to comply previously with ongoing services.

On January 31, 2017, the Department transferred the case to an ongoing CPS worker who could provide additional monitoring and services. The worker tried to contact mother on three different occasions, but was unable to reach her. When the Department made an unannounced visit, Hale stated that she could no longer care for the children. Mother suggested that the Department place the children with her mother, but the maternal grandmother lived in Texas and had received two founded CPS complaints against her in New York.[4] The Department removed the children from mother's care and placed them in foster care. At the time of the removal, the children were four and six years old.

---

[4] The maternal grandmother filed petitions for custody of the children in May 2017. The JDR court ordered a home study, which did not recommend that the children be placed with the maternal grandmother. On January 4, 2018, the JDR court dismissed the maternal grandmother's petitions.

On February 23, 2017, the City of Roanoke Juvenile and Domestic Relations District Court (the JDR court) entered a preliminary removal order and adjudicated that the children were abused or neglected. On April 4, 2017, the JDR court entered the dispositional order.

The Department required mother to participate in individual counseling, parenting classes, and Project Link, where she could work with a substance abuse case manager. The Department also required mother to maintain medication compliance and stay in contact with the Department. The Department provided supervised weekly visitation.

On April 28, 2017, mother tested positive for marijuana and cocaine. On July 10, 2017, mother reported to Project Link for substance abuse treatment and was assigned a case manager. Mother tested positive for cocaine again on July 11 and 26, 2017. She told her case manager that she did not like "being around crowds or groups," so mother only attended two group sessions for substance abuse. Mother left the program, and as a result, she could not participate in individual counseling. Between September and November 2017, mother wanted to participate in a residential treatment program, so her case manager assisted her with her application for the program. However, there was a "staff problem" at the program, and mother never attended.

Mother's case manager referred her to two different services to address her concerns about domestic violence. Mother participated in a phone interview, but later refused to attend the program. In April 2018, crisis services and the police became involved with mother. Mother's case manager referred mother to additional domestic violence services and gave her as much assistance as she could.

In addition to her non-compliance at Project Link, mother did not regularly attend the weekly visitations with the children, and there were some visits when she appeared under the influence. During other visits, mother sat on the couch and did not engage in meaningful interaction with the children. Mother's last visit with the children occurred on March 30, 2018.

On March 6, 2018, the JDR court entered orders terminating mother's parental rights and approving the goal of adoption.[5] Mother appealed to the circuit court.

On July 10, 2018, the parties appeared before the circuit court. The Department presented evidence that mother had not cooperated with medication management and had never participated in individual counseling or parenting classes, as recommended. She also failed to maintain regular contact with the Department.

When the children first entered foster care, the Department placed them in the same foster home. The children were disruptive and destructive in the foster home. Due to the oldest child's aggressive and harmful behaviors, the child was hospitalized twice, and the Department separated the children into two different foster homes. The oldest child was diagnosed with adjustment disorder with mixed disturbance of emotions and conduct. The youngest child also was diagnosed with adjustment disorder with mixed disturbance of behavior and emotions, as well as post-traumatic stress disorder and attention deficit hyperactivity disorder (ADHD). The Department presented evidence that the children received outpatient counseling, in-home services, and medication management. At the time of the hearing, the oldest child was still struggling, but his behaviors were better managed. The youngest child started displaying some of the same disruptive behaviors as the oldest child and was removed from her foster home.

At the conclusion of the Department's evidence, mother moved to strike the evidence, which the circuit court denied. Mother testified that she had a "good bond" with her children and did not want her parental rights terminated. Mother said that she had lived in the same house since the Department removed the children, but she wanted to relocate to Christiansburg to improve her chances of staying sober. Mother explained that she visited with the children as

---

[5] The JDR court also terminated the parental rights of the children's father, who appealed to the circuit court. After hearing the evidence and argument on July 10, 2018, the circuit court terminated the parental rights of the children's father.

much as she could because she was "having a lot of marital problems," including domestic violence. She also admitted to missing some visitations due to her drug use. She further testified that she and her husband were separated and that he was incarcerated for possession of cocaine and heroin.[6] Mother admitted that she had struggled with domestic violence and substance abuse issues, but "things [were] getting easier and better" since her husband had been incarcerated.

At the hearing, mother claimed that the Department never gave her information about how to start another parenting class or obtain mental health support. She also alleged that the Department never explained to her the importance of medication management or completion of substance abuse treatment. On cross-examination, however, mother acknowledged that she was present at the JDR court proceedings and heard what she was required to do to be reunited with her children. Mother testified that showing up for services "was easier said than done" because of her marital problems.

Mother also testified that she was diagnosed with schizophrenia and personality disorder. She was prescribed medication, which she said that she regularly took. Mother acknowledged that she had access to medication management.

At the conclusion of all of the evidence, mother renewed her motion to strike, which the circuit court denied. After hearing the parties' arguments, the circuit court terminated mother's parental rights to the children under Code § 16.1-283(B) and (C)(2) and approved the foster care goal of adoption. On September 4, 2018, the circuit court entered the final order memorializing its ruling. This appeal followed.

---

[6] Mother acknowledged that she had testified in earlier proceedings that she and her husband had separated, but they later reconciled.

ANALYSIS

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Castillo v. Loudoun Cty. Dep't of Family Servs., 68 Va. App. 547, 558 (2018) (quoting Logan v. Fairfax Cty. Dep't of Human Dev., 13 Va. App. 123, 128 (1991)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Fauquier Cty. Dep't of Soc. Servs. v. Ridgeway, 59 Va. App. 185, 190 (2011) (quoting Martin v. Pittsylvania Cty. Dep't of Soc. Servs., 3 Va. App. 15, 20 (1986)).

Mother challenges the termination of her parental rights and contends that she had "limits on her ability to parent due to her emotional impairment" from domestic violence and substance abuse. She asserts that the Department did not provide her with sufficient services, especially considering her circumstances.

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 271 (2005).

- 7 -

The Department removed the children from mother's care due to her substance abuse issues and neglect of the children. The Department advised mother of what she had to do to be reunited with her children and provided mother with numerous services and referrals. The Department arranged for mother to visit weekly with her children; however, mother missed several visitations. The Department referred mother to a parenting class, which she did not complete. The Department referred mother to Project Link, where a case manager tried to work with mother, to no avail. The case manager referred mother to group sessions for substance abuse, but mother said that she could not work in a group setting. Mother tested positive for drugs several times while the children were in foster care. The case manager also referred mother to several domestic violence programs, but mother refused to attend them. Mother's refusal to participate in services at Project Link prevented her from participating in individual counseling. The Department "is not required to force its services upon an unwilling or disinterested parent." Tackett v. Arlington Cty. Dep't of Human Servs., 62 Va. App. 296, 323 (2013) (quoting Harris v. Lynchburg Div. of Soc. Servs., 223 Va. 235, 243 (1982)); see also Logan, 13 Va. App. at 130. The record demonstrates that mother did not complete the required services and, accordingly, did not substantially remedy the conditions that led to the children's placement in foster care.

At the time of the circuit court hearing, the children had been in foster care for approximately seventeen months. The evidence proved that the children had significant behavioral issues. The oldest child had been hospitalized twice because of his behavioral issues. The youngest child was developing similar issues and required extensive counseling. Mother was not in a position to care for the children and their special needs. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Tackett, 62 Va. App. at 322 (quoting

Kaywood v. Halifax Cty. Dep't of Soc. Servs., 10 Va. App. 535, 540 (1990)). Considering the totality of the record, the circuit court did not err in finding that the termination of mother's parental rights under Code § 16.1-283(C)(2) was in the best interests of the children.

"When a trial court's judgment is made on alternative grounds, we need only consider whether any one of the alternatives is sufficient to sustain the judgment of the trial court, and if so, we need not address the other grounds." Kilby v. Culpeper Cty. Dep't of Soc. Servs., 55 Va. App. 106, 108 n.1 (2009); see also Fields v. Dinwiddie Cty. Dep't of Soc. Servs., 46 Va. App. 1, 8 (2005) (the Court affirmed termination of parental rights under one subsection of Code § 16.1-283 and did not need to address termination of parental rights pursuant to another subsection). Therefore, we will not consider whether the circuit court erred in terminating mother's parental rights under Code § 16.1-283(B).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.